**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Celia Da Silva, *et al.*, | No. CV-23-01490-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Lyft Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Lyft, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. 20, Mot.), to which Plaintiffs Celia, Jessica, Bryant, and Stewart Da Silva ("the Da Silvas") filed a Response (Doc. 21, Resp.), and Lyft filed a Reply (Doc. 22, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Lyft's Motion.

**I.    BACKGROUND**

In the Complaint (Doc. 1-1 at 2–18, Compl.), the Da Silvas allege the following facts. Lyft offers and manages an application to allow drivers to provide rideshare services. Jose Da Silva regularly used the Lyft app to earn income through passenger rides. On June 12, 2021, Jose was driving on his way to pick up a Lyft passenger. While Jose was on the I-17 freeway in Phoenix, he was rear-ended by Tiyon Tavon-Tijah Moore. Following the first collision, Jose's vehicle was struck by a second vehicle driven by Paul Collett. Jose died from his injuries stemming from the second collision.

The Da Silvas, as the wrongful death beneficiaries for Jose, settled the claims against Mr. Collett with his insurer. However, the Da Silvas allege that Mr. Collett was underinsured and unable to provide them adequate compensation.

Lyft operates as a Transportation Network Company ("TNC") in Arizona, which is defined as a software application used to connect passengers and transportation network services provided by company drivers. A.R.S. § 28-9551(3). Under Arizona's Transportation Financial Responsibility Law, TNCs must provide liability insurance when a driver is using the TNC platform and providing transportation services. A.R.S § 28-4038. TNCs must maintain (1) primary commercial motor vehicle liability insurance in a minimum amount of $250,000 per incident; and (2) commercial uninsured motorist ("UM") coverage in a minimum amount of $250,000 per incident. See A.R.S. § 28-4038(B).

Lyft's website, as provided in the Complaint, contains information on the insurance it provides to its drivers. The website specifies that when a driver is picking up a passenger, Lyft provides "uninsured/underinsured motorist bodily injury" coverage. (Compl. Ex. A at 3.) A footnote amended to that provision states that, "Coverage, where provided, may be modified to the extent allowed by law." (Compl. Ex. A at 3.) Lyft provided UM coverage for its Arizona drivers but did not maintain underinsured motorist ("UIM") coverage. In their Complaint, the Da Silvas raise four claims against Lyft based on its failure to provide UIM coverage: (1) negligence or breach of good faith and fair dealing, (2) negligent misrepresentation, (3) unjust enrichment, and (4) misrepresentation in violation of Arizona insurance code. (Compl. ¶¶ 18–47.) Lyft now moves to dismiss the Da Silvas' claims under Federal Rule of Civil Procedure 12(b)(6).

## II.  LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for

failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. ANALYSIS

#### A. Referenced Documents

The Da Silvas have attached supporting documents to their Response to Lyft's Motion to Dismiss: a Certificate of Liability Insurance (Doc. 21-1) and Jose's Driving Record on the Lyft app (Doc. 21-2).

The Court may consider certain materials such as documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, in resolving the motion to dismiss, the Court generally cannot consider evidence that is

outside the pleadings. *Id*. at 907. In ruling on a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Here, the Court will not consider the documents that the Da Silvas attached to their Response. These documents were neither attached to nor incorporated by reference into the Da Silvas' Complaint. Moreover, the Da Silvas have not demonstrated that the Court should take judicial notice of these documents. Thus, the Court will not consider these documents in its analysis.

**B.     Negligence**

The Da Silvas first allege that Lyft was negligent in failing to obtain UIM for Jose as a Lyft driver. (Compl. ¶ 21.) The Da Silvas also allege that Lyft acted negligently in failing to inform Jose that it had not purchased UIM coverage in Arizona. (Compl. ¶ 22.) Lyft argues that it owed no duty to Jose related to UIM coverage. (Mot. at 6.)

Under Arizona law, negligence liability is imposed on the defendant when the plaintiff proves: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827–28 (Ariz. 2018). Duty arises from "recognized common law special relationships or relationships created by public policy." *Id*. at 829. A duty based on a special relationship

may arise from a contract. *Id*. Courts should exercise great restraint in declaring a public policy duty in the absence of a state statute that identifies such a duty. *Id*. at 830. The issue of duty is not a factual matter, but rather a legal matter to be determined by the Court. *Gipson v. Kasey*, 150 P.3d 228, 232 (Ariz. 2007).

The Da Silvas have not plausibly alleged that Lyft owed a duty to Jose. They allege that a general ongoing contract between Jose and Lyft created a special relationship between the two from which a duty arose for Lyft to act reasonably, but they cite no legal authority to support that proposition. (Compl. ¶ 13.)

For its part, Lyft cites the Arizona statutes governing TNCs, and those statutes do not include a requirement for a TNC to carry UIM insurance—a proposition which the Da Silvas do not refute. The Da Silvas provide no legal support for the proposition that a TNC like Lyft has a duty to provide more insurance for its drivers than required by Arizona law or that such a duty must arise as a matter of public policy. Because their allegations are insufficient to plausibly show a duty, the Da Silvas fail to state a claim of negligence against Lyft.

When a defective claim can be cured, the plaintiff is entitled to amend the complaint before the Court dismisses the action. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Here, it does not appear that the Da Silvas can cure the defect in their negligence claim by amendment, so the Court will dismiss the claim without leave to amend.

**C.     Breach of Good Faith and Fair Dealing**

As an alternative to their negligence theory, the Da Silvas next allege that Lyft breached a covenant of good faith and fair dealing with Jose. Specifically, the Da Silvas claim that Lyft did not implement its "ongoing contract" with Jose in such a way that Jose received the intended benefits flowing from the alleged contract when Lyft failed to obtain UIM coverage for Jose and failed to inform Jose of its decision to forgo purchasing UIM coverage. (Compl. ¶¶ 21, 22.) In the Complaint, the Da Silvas do not claim that Lyft's failure to obtain UIM coverage for Jose was a breach of the alleged contract with Jose, but rather that it breached a duty of good faith and fair dealing.

Arizona law implies in every contract, regardless of subject matter, a duty of good faith and fair dealing. *Rawlings v. Apodaca*, 726 P.2d 565, 569–570 (Ariz. 1986). Ordinarily, the remedy for the breach of this covenant is through an action in contract. *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991). A party may bring an action in tort claiming damages for breach of the covenant of good faith only when a special relationship exists between the parties. *Rawlings*, 726 P.2d at 576.

The starting point of a breach of the duty of good faith and fair dealing claim is a contract between the parties. *Id.* at 569 ("The duty arises by virtue of a contractual relationship.") To that end, the Da Silvas simply allege, "Jose had an ongoing contract with Lyft to perform rideshare services through Lyft's application." (Compl. ¶ 13.) The Complaint contains no allegations as to whether the contract was express or implied, or, more importantly, what the terms of the alleged contract were. In their Response, the Da Silvas contend that simply alleging the existence of a contract is enough and, without citation to allegations in the Complaint or any legal authority, that "[t]here should be no dispute that there was a contract between Lyft and Jose, and that said contract between Lyft and Jose was one of adhesion." (Resp. at 6.) But the extent of any duty arising from a contractual relationship necessarily depends on the extent of the contractual relationship—that is, the terms of the contract. Without any non-conclusory factual allegations as to the terms of the underlying contract, the Court cannot infer whether and to what extent a duty arose.

Even if the Court were to find that the Da Silvas adequately alleged an ongoing contractual relationship between Lyft and Jose, the Da Silvas fail to allege facts from which the Court can infer the existence of the required special relationship. Under Arizona law, the type of contract from which a tort claim for breach of good faith and fair dealing may arise is generally one that creates a "special, partly noncommercial relationship[], and when the provider of the service fails to provide the very item which was the implicit objective of making the contract, then contract damages are seldom adequate." *Rawlings*, 726 P.2d at 575 (quoting W. Prosser & W. Keeton, Law of Torts § 92 at 660–61 (5th ed. 1984)).

"These relationships are 'characterized by elements of public interest, adhesion, and fiduciary responsibility.'" *Id.* at 574.

The Da Silvas allege no facts from which the Court can find the relationship between Lyft was characterized by an element of public interest or that a fiduciary relationship existed between the parties. And although the Da Silvas argue in their Response—without citation to any legal authority—that the alleged contract was one of adhesion, the Complaint contains no factual allegations supporting that position.

> The term [adhesion contract] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.

*Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988) (cited with approval in *McAlister v. Citibank (Ariz.)*, 829 P.2d 1253, 1259 (Ariz. Ct. App. 1992)).

The Court cannot infer from the Da Silvas' conclusory allegations whether any of these factors were present in the "ongoing contract" between Lyft and Jose, plausibly making it one of adhesion; such an inference is far from what the Da Silvas argue is indisputable. Because the Complaint contains no facts regarding the formation or extent of a contractual relationship between Lyft and Jose or the elements of public interest, adhesion, and fiduciary responsibility in that relationship, the Da Silvas fail to state a claim arising from a duty of good faith and fair dealing.

Going one step further, even if the Court could plausibly infer contract terms between Lyft and Jose out of which a special relationship arose, the Da Silvas do not allege any facts showing that Lyft failed to fulfill the purpose of the alleged contract with Jose— the essence of a breach of the duty of good faith and fair dealing claim. *See Rawlings*, 726 P.2d at 575. If anything, the Complaint shows that the alleged "ongoing contract" between Lyft and Jose was for Lyft to provide a platform from which Jose could conduct a ridesharing service for remuneration—a distinctly commercial relationship. No facts in the

1  Complaint plausibly lead to the conclusion that the purpose of the contract was for Lyft to
2  provide UIM coverage to Jose. For all these reasons and because the Court finds the
3  Da Silvas cannot cure the myriad defects in the claim by amendment, the Court dismisses
4  the Da Silvas' claim for breach of the duty of good faith and fair dealing without leave to
5  amend. *See Lopez*, 203 F.3d at 1130.

### D. Negligent Misrepresentation

The Da Silvas next raise a claim of negligent misrepresentation based on a statement on Lyft's website that it provides uninsured/underinsured motorist bodily injury insurance for covered accidents. (Compl. ¶¶ 26–29; Ex. A at 3.)

Negligent misrepresentation occurs under Arizona law when one in the course of business "supplies false information for the guidance of others in their business transactions." *St. Joseph's Hosp. and Medical Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (quoting *Restatement (Second) of Torts* § 552). The provider of false information is subject to liability for loss caused by another's "justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Id*. Thus, one of the key elements of a negligent misrepresentation claim is that the plaintiff was provided with false information. *See e.g.*, *Belen Loan Investors, LLC v. Bradley*, 296 P.3d 984, 992 (Ariz. Ct. App. 2012); *Frazier v. Southwest Sav. & Loan Ass'n*, 653 P.2d 362, 367 (Ariz. Ct. App. 1982).

The Da Silvas attach to the Complaint a screen shot of Lyft's website around the time of Jose's accident, which stated, "Lyft provides the following insurance for covered accidents: . . . Uninsured/underinsured motorist bodily injury." (Compl. Ex. A at 3.) The statement included a footnote, which stated, "Coverage, where provided, may be modified to the extent allowed by law." (Compl. Ex. A at 3.) Lyft contends that the footnote negated the statement it was attached to in Jose's case because the footnote provided that coverage was not unequivocal, that is, it allowed Lyft not to obtain UIM coverage in Arizona because Arizona did not require UIM coverage. (Mot. at 10–11.)

In Arizona, a basic rule of construction is to interpret provisions to give effect to them all. *Norman v. Recreation Ctrs. of Sun City, Inc.*, 752 P.2d 514, 516–17 (Ariz. Ct. App. 1988). For example, in interpreting a contract, Arizona courts "do not construe one provision in a contract to render another provision meaningless." *Id.* at 517. Here, Lyft's alleged representation, "Lyft provides the following insurance," is unambiguous and unequivocal. Giving effect to both this statement and the footnote, the footnote is not read to say that Lyft does *not* provide the following insurance in certain instances, as Lyft argues. Rather, the footnote is read only to modify the fact that Lyft provides UIM insurance by stating that the coverage terms may be modified on a state-by-state basis.[1]

The Da Silvas have adequately alleged that Lyft's statement on its website was false, because Lyft did not provide UIM insurance. They also adequately allege that Jose reasonably relied on Lyft's representation as to insurance to his detriment around June 12, 2021. (Compl. ¶¶ 27–33.)

Lyft also argues that the Complaint fails to comply with Federal Rule of Civil Procedure 9(b), in pleading a claim grounded in misrepresentation. (Mot. at 8–9.) Rule 9(b) imposes heightened pleading requirements. Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The heightened pleading requirements of Rule 9(b) apply even where "fraud is not a necessary element of a claim." *Vess*, 317 F.3d at 1106. So long as a plaintiff alleges a claim that "sounds in fraud" or is "grounded in fraud," Rule 9(b) applies. *Id.* The Da Silvas sufficiently plead the negligent misrepresentation claim by stating that Lyft misrepresented UIM coverage to its Lyft drivers on its website around the time Jose was in the accident. For these reasons, the Court will deny Lyft's request to dismiss the Da Silvas' negligent misrepresentation claim.

---

[1] Although not argued by the parties, the Court also construes the phrase "uninsured/underinsured motorist bodily injury" coverage to include either, depending on the accident and the insurance coverage of the tortfeasor. That is, the slash in this instance delineates two alternatives, each of which is possible depending on the circumstances, as when a slash delineates "and" and "or."

### E. Unjust Enrichment

Next, the Da Silvas raise a claim of unjust enrichment. An unjust enrichment claimant must show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law. *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019) (quoting *Wang Elec., Inc. v. Smoke Tree Resort, LLC* 283 P.3d 45, 49 (Ariz. Ct. App. 2012)). The mere receipt of a benefit by the defendant is insufficient to entitle a plaintiff to compensation. *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). Unjust enrichment provides a remedy when a party receives a benefit at another's expense and, in good conscience, the benefited party should compensate the other. *Wang*, 283 P.3d at 49. The absence of justification for the enrichment and the impoverishment is dispositive when evaluating an unjust enrichment claim. *Id*.

The Da Silvas have not alleged a plausible claim for unjust enrichment. The Da Silvas claim that Lyft was unjustly enriched when it received part of Jose's rideshare payments for the purpose of obtaining liability insurance, but Lyft did not provide UIM as part of that coverage. However, no allegations in the Complaint plausibly lead to the conclusion that Lyft did not beneficially apply Jose's payments, including to buy liability insurance as required by Arizona law. The mere allegation that Jose did not receive the level of insurance coverage he anticipated does not mean that Lyft was unjustly enriched. Because Lyft's enrichment was justified, the claim for unjust enrichment is not plausible, and the Court will dismiss it without leave to amend. *See Lopez*, 203 F.3d at 110.

### F. Misrepresentation Under Arizona Insurance Code

Lastly, the Da Silvas claim that Lyft violated A.R.S. § 20-443 and A.R.S. § 20-444 of the Arizona Insurance Code. (Compl. ¶¶ 43–44.) A.R.S. § 20-443 prohibits misrepresentations and false or misleading statements regarding the sale or advertisement of an insurance policy. *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 563 (Ariz. Ct. App. 1998). The Court has found no Arizona case law that applies A.R.S. § 20-443 to parties other than insurance companies or insurance agents. *See e.g.*, *id.*; *Sparks v. Republic Nat.*

*Life Ins. Co.*, 647 P.2d 1127, 1138 (Ariz. 1982); *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000). It also finds that Arizona case law has only applied A.R.S. § 20-444 to insurance companies. *See Haisch*, 5 P.3d at 944. The Da Silvas do not cite any cases in their Response to show that these statutes can or should be applied to a non-insurance company such as Lyft. The Court declines to extend the application of A.R.S. § 20-443 and § 20-444 beyond what previous courts have allowed. The Da Silvas' claim under the Arizona Insurance Code is not plausible, and the Court will dismiss it without leave to amend. *See Lopez*, 203 F.3d at 110.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant Lyft Inc.'s Motion to Dismiss (Doc. 20). The claims for Negligence, Breach of Good Faith and Fair Dealing, Unjust Enrichment, and Misrepresentation in Violation of the Arizona Insurance Code are dismissed without leave to amend. Defendant's Motion is denied as to the claim for Negligent Misrepresentation, which shall proceed.

**IT IS FURTHER ORDERED** that Defendant shall file an Answer to the remaining claim within the timeframe set forth in the applicable Rules. The Court will set a Rule 16 Scheduling Conference by separate Order.

Dated this 31st day of October, 2023.

Honorable John J. Tuchi
United States District Judge